**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**

LARRY GRAY BLAKLEY SR.,

*Plaintiff*,

v.

SERGEANT JOSH MABE, in his individual and official capacity as Deputy for Stokes County Sheriff; SHERIFF JOEY LEMONS, in his official capacity as Sheriff of Stokes County, North Carolina; DEPUTY CODY SMITH, in his individual and official capacity as Deputy for Stokes County Sheriff; DEPUTY MONTY G. WOLFE, in his individual and official capacity as Deputy for Stokes County Sheriff; CAPTAIN TERRY DALTON in his individual and official capacity as a Captain for Stokes County Sheriff; and WESTERN SURETY COMPANY,

*Defendants*.
_________________________________/

CASE NO.: **1:2024-cv-00183**

VERIFIED COMPLAINT
Jury Trial Demanded

**COMES NOW**, Plaintiff Larry Blakley, by and through the undersigned counsel, and hereby sues Sheriff Joey Lemons, in his official capacity as Sheriff of Stokes County, North Carolina, Sergeant Josh Mabe, in his individual and official capacity as Deputy for Stokes County Sheriff; Deputy Cody Smith, in his individual and official capacity as Deputy for Stokes County Sheriff; Deputy Monty Wolfe, in his individual and official

capacity as Deputy for Stokes County Sheriff; Captain Terry Dalton in his individual and official capacity as Deputy for Stokes County Sheriff; and alleges as follows:

## INTRODUCTION

1. This is an action to recover compensatory and punitive damages as a result of the intentional misconduct, assault, battery, civil conspiracy, failure to intervene, false imprisonment, and excessive force perpetrated by Defendants against Plaintiff, Larry Gray Blakley Sr. (hereinafter, "Mr. Blakley"). Mr. Blakley experienced multiple violations of his rights as guaranteed by the U.S. and North Carolina Constitutions, as well as by federal and state law, when deputies of the Stokes County Sheriff's Office, under the guise of executing a warrant, brutally beat Mr. Blakley without cause.
2. On March 4, 2021, Defendants Mabe, Smith, and Wolfe attempted to execute a warrant for the arrest of Larry Gray Blakley Jr., the Plaintiff's 53-year-old son. Although they are family and share the name Larry Blakley, they have vastly different physical appearances and do not live at the same house. Moreover, the Plaintiff's date of birth on his license shows that he was more than twenty years older than his son.
3. When Defendants went to execute at the elder Mr. Blakley's home address, Defendants knew Mr. Blakley did not have an outstanding warrant for his arrest.
4. Defendants Mabe, Smith, and Wolfe had personal knowledge that the subject of the warrant, Larry Blakley, Jr., did not live at this address. Even the arrest warrant

stated a different residence for Larry Blakley, Jr. The officers had no legal right to enter Mr. Blakley's home.

5. Officers knocked on the door, and when Mr. Blakley, Sr. answered, they stormed into his residence, pushing and throwing him to the ground. The officers handcuffed Mr. Blakley and placed him under arrest for allegedly shoving an officer's shoulder. There was no warrant for this arrest.

6. Mr. Blakley answered his door unarmed. He was 75 years old at that time and suffered from a number of chronic medical conditions including Parkinson's disease. He did not invite the officers into his home or consent to them coming inside.

7. Without lawful authority, permission, or consent, Defendants Mabe, Smith, and Wolfe forced themselves into Mr. Blakley's home and physically threw an elderly and frail Mr. Blakley onto the floor and began to kick him.

8. Defendants Mabe, Smith, and Wolfe repeatedly kicked Mr. Blakley while he was on the floor, striking him in the shins, abdomen, hip, back, and even his forehead. One of the Defendants went so far as to stomp on Mr. Blakley's hand.

9. Mr. Blakley had no weapon and did not reach for one. Mr. Blakley posed no threat of immediate harm to any officer's safety when the forced their way into his house. Much less after they threw him onto the floor.

10. Defendants Mabe, Smith, and Wolfe savagely attacked Mr. Blakley, breaking one rib and two of his vertebrae, L1 – L2. The shocking, deep bruising along Mr.

Blakley's flanks and buttocks evidence the officers' aggression and utter disregard for the life and safety of this elderly man.

11. On March 04, 2021, at 11:03 p.m., Mr. Blakley was examined by the paramedics of Stokes County EMS. He complained of breathing difficulty and severe pain in his bilateral flank and rib after the police assault. He rated the pain level as 10/10. On examination, he was tachycardic with a pulse rate of 150 and had small abrasions over and under his right eye. He had bruising on his left hip, left lower back, right lower back, and right wrist. He was secured and moved to the ambulance, and normal saline and Fentanyl were administered en route. He was transported to Forsyth Medical Center for further evaluation and treatment.

12. On March 05, 2021, at 12:19 a.m., Mr. Blakley arrived at the ED of Novant Health - Forsyth Medical Center via EMS, where he was examined by a doctor for his injuries.

13. As a result of the police assault, Mr. Blakley, who was 75 years old at the time, sustained the following injuries:

    a. Contusion or ecchymosis to the right side of the forehead;
    b. Ecchymosis over right and left clavicle
    c. Chest pain
    d. Soreness in the middle of his chest
    e. Closed fracture of a rib
    f. Rib pain on the right side
    g. Ecchymosis to the right distal forearm and wrist region
    h. Multiple contusions
    i. Subcutaneous hematoma
    j. Soft tissue hematoma
    k. Muscular pain
    l. Spasm of lower back muscle
    m. Right-sided lower back pain with right sciatica

n. Closed fracture of the transverse process of lumbar vertebra
o. Lumbar disc bulge
p. Traumatic hematomas of the buttocks and lower back
q. Ecchymosis to the bilateral flanks
r. Flank pain
s. Urinary retention

14. On March 5, 2021, Plaintiff's granddaughter, Amanda Blakley, took the following image:


[1]

15. As Defendants Mabe, Smith, and Wolfe attacked Mr. Blakley, a North Carolina Department of Public Safety State Highway Patrol Deputy arrived to Mr. Blakley's home immediately after the beating.

16. Defendant Wolfe failed to report Defendants Mabe and Smith's use of force to the Stokes County Sheriff's Office.

[1] See Amanda Blakley Declaration attached to this Verified Complaint.

17. Following the attack, when Mr. Blakley's family sought to file administrative complaints against Defendants Mabe, Smith, and Wolfe, Cpt. Terry Dalton of the Stokes County Sheriff's Office intervened, telling the family that he had "seen the tapes" and there was no need to file a complaint. Defendant Dalton took affirmative action to prevent Mr. Blakley from protesting police brutality and helped to cover up the actions of these deputies.

18. Defendants Dalton and Lemons knew of prior excessive force complaints against Defendants Mabe, Smith, and Wolfe, including violence against the elderly, but failed to take any corrective action to ensure the safety of the people of Stokes County, North Carolina.

19. Upon information and belief, the actions of each Defendant, individually, and all of the Defendants, collectively, by and through their actions as described more fully below, deprived Mr. Blakley of his civil rights and constitute egregious, malicious, corrupt, excessive, and an objectively unreasonable use of force and improper police conduct that proximately caused Mr. Blakley to endure excruciating pain, mental suffering, permanent physical injury, the loss of mobility and the ability to care for himself, debilitating anxiety, sleeplessness, a loss of personal sense of security, and many other losses that the evidence will show.

## PARTIES, JURISDICTION, AND VENUE

20. This cause of action arises in Stokes County, North Carolina.

21. At all times relevant to this action, Plaintiff Larry Blakley, Sr., is a resident of the State of North Carolina and resides in King, North Carolina. Mr. Blakley is 75 years old and prior to this incident had no legal disability.

22. Under Chapter 153A of the North Carolina General Statutes, Defendant STOKES COUNTY is a body politic and corporate.

23. The North Carolina Counties Liability and Property Joint Risk Management Agency (the "NCACC/LPP"). The NCACC/LPP provides limited liability coverage to Stokes County, Sheriff Joey Lemons, Sergeant Josh Mabe, Deputy Wolfe, and Deputy Cody Smith, subject to the terms, conditions and exclusions contained in the NCACC/LPP Contract to which Stokes County is a Participant and under which the Sheriff and his deputies qualify as Covered Persons.

24. The NCACC/LPP is incorporated under the laws of North Carolina and has its principal place of business in Raleigh, North Carolina, and provides insurance coverage for law enforcement wrongful acts and public officials wrongful acts, including acts of the duly elected Sheriff of Stokes County and the employees and agents thereof.

25. Stokes County Sheriff's Office has contracted with NCACC/LPP to provide Public Officials Liability Coverage and Law Enforcement Liability Coverage.

26. NCACC/LPP has agreed with Stokes County and Sheriff Joey Lemons, in consideration of the payment of the contribution and in reliance upon the statements in the Application and subject to the limits of liability, exclusions, conditions, and other terms of the insurance contract will pay on behalf of himself

and Defendants Mabe, Smith, and Wolfe any Damages for Bodily Injury, Personal Injury or Property Damage the Defendants are legally obligated to pay because of a Law Enforcement Wrongful Act or Public Official Wrongful Act occurring during the Contract Period.

27. NCACC/LPP, Stokes County, and Sheriff Joey Lemons agreed that no coverage exists under the Public Officials Coverage or Law Enforcement Liability Coverage as to any claim for which the Defendants are protected by sovereign immunity and/or governmental immunity under North Carolina law. Such provision is inapplicable to claims arising under federal law.

28. NCACC/LPP assigned claim numbers C118410-0996-0001-01 to Mr. Blakley.

29. Sedgwick, on behalf of NCACC, denied Mr. Blakley's claim for damages.

30. Defendants Mabe, Smith, and Wolfe are covered persons of the Participant, Stokes County, whose wrongful acts are covered by a law enforcement liability insurance policy.

31. Upon information and belief, Defendants Lemon, Mabe, Smith, Wolfe, and Dalton, at all times relevant to this action, were adult citizens and residents of North Carolina, and were under no legal disability.

32. Defendant Sheriff Lemon is and was, at all times relevant hereto, the duly-elected Sheriff of Stokes County, North Carolina, and is named as a defendant in his official capacity.

33. Defendant Sheriff Lemon has a responsibility to ensure that all law enforcement officers acting as employees and/or agents of his office comply with constitutional

and statutory standards, including refraining from engaging in excessive force. Sheriff Lemon is further responsible for training and supervising the Stokes County Sheriff's Office ("SCSO") with respect to its hiring of officers, training of officers, and treatment of civilians engaged with officers.

34. At all times relevant hereto, Sheriff Lemon was acting in the course and scope of his official duties as the Stokes of Washington County and under the color of state law.

35. Sheriff Lemon is responsible for establishing and maintaining adequate policies and procedures including those for the proper execution of warrants and searches, for use of force, intervening in use of force, and de-escalation; training and supervising deputies on use of force, intervening in use of force, and de-escalation; disciplining deputies who use excessive force; and properly screening candidates for employment.

36. Defendants Mabe, Smith, and Wolfe were at all times relevant to this Complaint working for SCSO as employees or agents of SCSO, acting within the scope of their employment or agency with SCSO, and acting under the color of state law. Defendants Mabe, Smith, and Wolfe are sued in their individual capacities with regard to any federal law claims naming them as Defendant(s). They are sued their individual and official capacities with regard to any state law claims naming them as Defendants. They are sued in their individual and official capacities for compensatory and punitive damages under both state and federal law.

37. Defendant Dalton was at all times relevant to this Complaint working for SCSO as an employee and/or agent of SCSO, acting within the scope of his employment or agency with SCSO, and acting under the color of state law. Defendant Dalton is sued in his individual capacity with regard to any federal law claims naming him as Defendant. He is sued in his individual and official capacity with regard to any state law claims naming him as Defendant. He is sued in his individual and official capacity for compensatory and punitive damages under both state and federal law.

38. At all times relevant to this Complaint, the actions and practices of Defendants Lemons, Mabe, Smith, Wolfe, and Dalton, and those acting in their direction, were performed under the color of state law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution.

39. Upon information and belief, to the extent that any and/or all of the Defendants in this action claim they are a municipal and/or governmental and/or County owned, operated and/or funded entity, or an employee and/or agent of any such entity, such Defendants do not have governmental immunity and/or sovereign immunity for any of the acts or omissions described herein. In the alternative, should any and/or all of the Defendants in this action have governmental immunity and/or sovereign immunity, upon information and belief, any and/or all such Defendants have waived any and all such governmental and/or sovereign immunity to which they may have been otherwise entitled, for themselves, their agents, employees and all officials acting in their official (and, if applicable, individual) capacities for civil liability and tort by the act of purchasing (or otherwise procuring, obtaining

and/or having in place) liability insurance (or the functional and substantive equivalent thereof, i.e., participation in a local governmental risk pool, purchase of a surety bond, etc.) prior to, concurrent with, and/or subsequent to and/or applicable to the acts and omissions alleged herein.

40. Upon information and belief, both Stokes County, a government entity of North Carolina, was and is a participant in local governmental risk pool or the functional and substantive equivalent thereof, at all times applicable to the events that are the subject of this action and has purchased liability insurance coverage on behalf of Defendant Lemons, the duly elected Sheriff of Stokes County.

41. Upon information and belief, Defendant Sheriff Lemons purchased and maintains a surety bond through Defendant Western Surety Company, a company licensed, admitted, and authorized to do business in the State of North Carolina that serves as a surety for Defendant Sheriff Lemons pursuant to N.C. Gen. Stat. §§ 162-8 and 58-76-5, and by virtue of said surety bond has undertaken that in all things, the Sheriff would faithfully execute the office of Sheriff and perform all duties incumbent upon him by reason of his election to said office. Under North Carolina law, the Sheriff has waived governmental immunity by the purchase of his official bond.

42. Defendant Western Surety, an insurance company, was the surety company that provided a bond to Stokes County Sheriff Lemons in March 2021 pursuant to id. § 58-76.

43. Plaintiff sues Western Surety to recover on the two Sheriff's bonds, respectively, for the neglect and/or malfeasance of Sheriff Lemons and his employees whose actions and inactions proximately caused Blakley's injuries.

44. Upon information and belief, Defendants Lemons, Mabe, Smith, Wolfe, and Dalton, their officers, directors, employees and agents have waived governmental immunity under state tort law, if any there be, by the purchase of insurance by Stokes County, North Carolina, and/or the Sheriff of Stokes County, insuring the Office of Sheriff of Stokes County and any of their officers, agents and employees, including the Defendants Mabe, Smith, Wolfe, and Dalton named herein, against liability for negligent or intentional damage to person or property, or against absolute liability to person or property caused by an act or omission of the defendants or of any of their officers, agents or employees when acting within the scope of their authority and in the course of their employment.

45. In the alternative, if it is determined that Defendants Sheriff Lemons has not waived sovereign or governmental immunity or that any such waiver does not allow Plaintiff an adequate remedy at state law, then Plaintiff asserts a direct cause of action for violations of Plaintiff's rights under the North Carolina Constitution.

46. Subject matter jurisdiction is appropriate and proper in this Court and any and all such governmental immunity and sovereign immunity is and has been fully waived pursuant to N.C. Gen. Stat. § § 160A-485 and/or N.C. Gen. Stat. §153A-435.

47. This case presents an actual case and controversy arising under the Fourth and Fourteenth Amendments to the United States Constitution and asserts claims for relief under 42 U.S.C. § § 1983 and 1988, as well as claims for relief under North Carolina state law.

48. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1343(a) in that this action is to redress deprivation by the Defendants, under the color of state laws, of the rights of privileges and immunities granted to Plaintiff by the United States Constitution and by federal statutes.

49. Jurisdiction is further proper in this Court pursuant to 28 U.S.C. § § 1331 and 1443.

50. This Court has pendant and/or supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

51. Venue is proper in this, the Middle District of North Carolina, under 28 U.S.C. § 1391 in that one or more of the Defendants reside in Stokes County, North Carolina, and a substantial part of the claims asserted herein arose in this District.

**ACTUAL AND/OR APPARENT AGENCY**

52. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

53. At all times relevant to this action, Sheriff Lemons served as the chief law enforcement officer for Stokes County, North Carolina, as a duly elected government official.

54. At all times relevant to this action, the Stokes County Sheriff's Office ("SCSO"), acting on the authority of the duly elected Sheriff, exercised jurisdiction throughout Stokes County, including both the incorporated and the unincorporated areas, and provided law enforcement services for the unincorporated areas of Stokes County.

55. Upon information and belief, Defendant Lemons, as the duly elected Sheriff of Stokes County, holds final policymaking authority with respect to the use of force by deputies employed with by SCSO.

56. Defendant Lemons is sued both in his individual capacity as a policymaker, and under the doctrine of respondeat superior, for actions of SCSO deputies acting in the course and scope of their official duties.

57. The enforcement of laws of the state of North Carolina is an essential and well-recognized duty of all counties in the state of North Carolina. As such, at all relevant times in this action, Defendant Lemons had a non-delegable duty to engage in law enforcement activities within its borders.

58. At times relevant to the allegations alleged in this Complaint, Defendants Mabe, Smith, Wolfe, and Dalton were employed by the Defendant Lemons and/or the Stokes County Sheriff's Office as law enforcement officers, and each was acting at all relevant times as an agent of Defendant Lemons within the course and scope of his duties as a sworn officer of the Stokes County Sheriff's Office.

59. In the alternative, Defendants Mabe, Smith, and Wolfe's actions toward Plaintiff alleged herein were malicious, corrupt, and outside the scope of their official

duties as deputies and agents of Defendant Lemon and the Defendants are therefore individually liable for their actions.

## JOINT AND SEVERAL LIABILITY OF ALL DEFENDANTS

60. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

61. The Defendants are jointly and severally liable to Plaintiff for all damages alleged herein since their negligent or wrongful acts and omissions, singularly or in combination, concurred or combined to produce, as a proximate cause, indivisible injuries to Plaintiff.

## FACTUAL ALLEGATIONS

62. On March 4, 2021, Plaintiff Larry Blakley, Sr. who, at the time of the incident, was age 75, lived alone at his residence on 107 Carson Circle Road in Stokes County, North Carolina.

63. Mr. Blakley battles with Parkinson's disease and worked for R.J. Reynolds tobacco company for twenty- two years.

64. Mr. Blakley has two children and four grandchildren. He lost his wife in 2016 and prior to the incident giving rise to suit, Mr. Blakley lived a quiet life with his dog, Ginger, and

65. Unbeknownst to Plaintiff, on March 4, 2021, Defendants Mabe, Smith, and Wolfe, deputies with the Stokes County Sheriff's Office, were in possession of an arrest warrant for Larry Blakley, Jr., age 53. The address listed on the warrant was not the address of Larry Blakley, Sr.'s residence.

66. On the evening of the incident, Mr. Blakley was in his home and drinking a coffee when he heard loud knocks at his door by someone who claimed to be law enforcement.
67. Upon opening the door, Mr. Blakley was met by Sergeant Josh Mabe, Deputy Monty Wolfe, and Deputy Cody Smith. Looking for a suspect who had an outstanding warrant, Sheriff Deputies proceeded to enter Mr. Blakley's home without a warrant or cause to justify such an entrance, and they began to search Mr. Blakley's home.
68. Defendants Mabe, Smith, and Wolfe attempted to execute an arrest warrant on Mr. Blakley's son; however, the son, Larry Blakley Jr.'s warrant stated the son resided at 102 Sheraton Court King, NC 27021.
69. Mr. Blakley had lived at his residence by himself after the passing of his wife several years prior, and on March 4, 2021, Mr. Blakley's son did not reside at his home on Carson.
70. Mr. Blakley and his son did not share the same birthdates.
71. Mr. Blakley was born in 1946, and his son was born in 1968.
72. Mr. Blakley and his son have vastly different physical attributes in both their relative height and size.
73. The address on the arrest warrant was located almost three miles away from Larry Blakley, Sr.'s home.

74. Defendants Mabe, Smith, and Wolfe had personal knowledge of the appearance and physical characteristics of Larry Blakley, Jr., the subject of the arrest warrant. Mr. Blakley, Sr. does not fit that description at all.
75. Upon information and belief, Defendants Mabe, Smith and Wolfe had personal knowledge that Larry Blakley, Jr. did NOT reside with Larry Blakley, Sr.
76. Upon information and belief, Defendants Mabe, Smith and Wolfe had executed arrest warrants on Larry Blakley, Jr., whose listed address was not the same as Plaintiff.
77. Larry Blakley Jr. had a warrant issued for case file number 20CR050607 in the Stokes County District Court for driving while impaired and driving while license revoked impaired revocation.
78. Stokes County Deputy JT Webster was aware of Larry Blakley Jr.'s outstanding warrant for arrest.
79. Prior to the Defendants entering his home, Larry Blakley Sr. had not been in contact with Larry Blakley, Jr. since October of 2020.
80. Defendants Mabe, Smith, and Wolfe approached Mr. Blakley's home after dark, at approximately 8:30 PM. Blakley was home alone and not expecting visitors.
81. Mr. Blakley heard loud knocks at his door and someone yelling they were law enforcement. Mr. Blakley made his way to his front door and opened it.
82. One of the deputies indicated he was looking for a suspect and asked to come inside. Mr. Blakley said no.

83. Defendants Mabe, Smith, and Wolfe proceeded to enter Mr. Blakley's home without a warrant and without permission.

84. Mr. Blakley voluntarily produced identification to the deputies, demonstrating that he was not the individual listed on the warrant despite the similar name.

85. Defendants Mabe, Smith, and Wolfe's body-worn cameras captured the incident with Mr. Blakley on March 4, 2021.

86. Defendant Terry Dalton confirmed to Plaintiff's granddaughter that Defendants had worn body cameras and that the Sheriff's Office was investigating the incident.

87. Mr. Blakley committed no crime in the presence of Defendants Mabe, Smith, or Wolfe, and they had no probable cause to enter Mr. Blakley's home.

88. Mr. Blakley is a frail, elderly man who was unarmed. He posed no imminent threat of harm to any of the officers who presented at his home.

89. Defendants Mabe, Smith, and Wolfe, began to search Mr. Blakley's home, despite having no lawful authority and no consent to do so, when suddenly and without warning, these Defendants, or some combination thereof, violently threw Mr. Blakley to the floor.

90. After throwing Mr. Blakley to the floor, Defendants Mabe, Smith, and Wolfe placed Mr. Blakley in handcuffs. They continued their assault on Mr. Blakley, violently stomping on his hand and kicking and punching him along his trunk, in the shins, abdomen, hip, back, and even his forehead.

91. Mr. Blakley was restrained in handcuffs after being thrown violently to the floor and posed no risk of harm to anyone on the scene. Nevertheless, Defendants Mabe, Smith, and Wolfe continued their brutal attack on Mr. Blakley which served no legitimate government or law enforcement purpose.

92. Upon information and belief, a North Carolina State Highway Patrol Officer arrived at Mr. Blakley's home immediately after the assault by Defendants Mabe, Smith, and Wolfe and saw the injuries inflicted on Mr. Blakley.

93. Defendants Mabe, Smith, and Wolfe transported Mr. Blakley, still restrained in handcuffs, to the Stokes County Jail in Danbury, North Carolina.

94. Defendants failed to restrain Mr. Blakley in the police car, leaving him to be thrown around in the back seat of the vehicle.

95. No one sought medical attention or provided any medical care to Mr. Blakley before taking him to jail.

96. Upon bringing Mr. Blakley, still in handcuffs, into the Stokes County Jail, Defendant Mabe threatens Mr. Blakley by saying **"I'll flatten your ass again."** Mr. Blakley is in pain and cannot sit still.

97. In a recorded video from the Magistrate's Office, Defendant Mabe told Magistrate Gallimore that he took Mr. Blakley to the ground.

98. Mr. Blakley cooperated with Defendant Mabe and was relieved when he is finally able to return home later than evening.

99. Mr. Blakley called his daughter, Shannon Goins, to tell her about the incident and told her that he was having trouble breathing.

100. Ms. Goins called for EMS and they arrived to transport Mr. Blakley to the hospital for much-needed medical attention.

101. Mr. Blakley was tachycardic and was provided IV medications for his obvious pain.

102. Once he arrived at the hospital, Mr. Blakley remained in severe pain despite the medications. Imaging revealed one broken rib and left-sided transverse process fractures of the vertebral bodies at L1 and L2 on his spine. Defendants Mabe, Smith, and Wolfe broke Mr. Blakley's back and a rib.

103. The following day, the brutality of this attack showed in the intense bruising that appeared on Mr. Blakley's body, captured by Amanda Blakley's cell phone.






104. Ms. Goins and Amanda Blakley, Mr. Blakey's granddaughter, contacted Defendant Dalton about filing a complaint against Defendants Mabe, Smith, and Wolfe. Defendant Dalton told them that he had "already seen the videos" that there was no need to file a complaint.

105. Despite Defendant Dalton's attempts to dissuade Mr. Blakley and his family from filing a complaint, Mr. Blakley, Amanda Blakley, and Shannon Goins traveled to the Stokes County Sheriff's Office and spoke with Defendant Dalton personally.

106. Mr. Blakley, Amanda Blakley, and Shannon Goins showed Defendant Dalton the photos of Mr. Blakley's injuries and, upon Defendant Dalton's request, emailed them to him.

107. Defendants Mabe, Smith, and Wolfe Sheriff Deputies inflicted unnecessary and wanton pain and suffering.

108. The force used by Defendants was applied maliciously and sadistically for the very purpose of causing harm, rather than in a good-faith effort to maintain or restore discipline.

109. On March 4, 2021, Mr. Blakley begged Stokes County Sheriff Deputies to refrain from assaulting him and informed them that he has a medical condition that will become inflamed if they continued to assault him. Defendants engaged in such use of force while Mr. Blakley was handcuffed.

110. Defendant Dalton informed Mr. Blakley that the Sheriff's Office had complaints about Defendants Mabe, Smith and Wolfe for excessive force and that the offices would feed off one another when they worked together.

111. Defendant Dalton assured Mr. Blakley that the matter would be handled and heard Mr. Blakley and his family's complaints. Upon information, Defendant Dalton did open any file or investigation of this matter despite receiving the verbal

complaints.  Defendant Dalton did not provide Mr. Blakley with any forms, paperwork, of file number concerning his complaint.

112. Upon information and belief, Defendant Dalton ignored the complaints of Mr. Blakley, lied to the family about seeing videos of the incident or destroyed the same, and took active steps to conceal this report of excessive force.

113. As a result of the conduct of each of these Defendants both in their individual capacities and official capacities as agents of the Stokes County Sheriff Joseph Lemons, Mr. Blakley was permanently injured both physically and mentally and his constitutional rights violated.

114. As of September 2022, the medical expenses for the treatment of injuries that Mr. Blakley suffered because of the assault by Defendants amounted to **$96,198.70.** Mr. Blakley continues to incur medical expenses and bills as a result of the injuries sustained.

115. Mr. Blakley had been leading a pain-free and independent life before he sustained significant injuries as a result of the police assault. Since the assault, he has been suffering from chronic pain in his lower back, flanks, and buttocks that resulted in a drastic change during his life.

116. Mr. Blakley is unable to participate in personal, social, or work activities because of the persistent pain and discomfort in his back.

117. Mr. Blakley no longer lives alone and feels  frustrated and depressed because he is no longer able to complete his work or perform household chores like before.

118. Mr. Blakley has difficulty reaching forward, and reaching overhead to open cabinets, and with lifting groceries. Any activities which require bending over and getting up such as cleaning, performing heavy activities such as vacuuming or moving furniture, as well as household chores are difficult for him. He has significant difficulty with personal care and hygiene.

119. As a result of Defendants' actions, Mr. Blakley developed sleeplessness that impacted his health because he has heart disease with diabetes and hypertension.

120. There are no conditions or events in Plaintiff's medical history that could indicate another cause for his injuries sustained on March 4, 2021.

121. Prior to the assault, Plaintiff was not restricted in any way from his activities of daily living. However, since the assault, he continues to experience persistent low back pain, flank pain, forearm pain and claudication pain.

122. Since the injury, Plaintiff has been experiencing severe stiffness in his back, and as a result, he finds it very difficult to sleep.

123. Plaintiff reported in his medical records that it has been difficult for him to perform even the most basic activities of daily living after the assault due to his persistent flank, abdomen, and low back pain. He reported that bending, lifting, carrying, pushing and pulling aggravated his pain. His pain came about almost immediately after the assault. He could not sit for long periods due to his discomfort.

**42 U.S.C. § 1983 – FOURTH AMENDMENT**
**(Defendants Mabe, Smith, and Wolfe in their individual capacities)**

124. The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

125. Defendants Mabe, Smith, and Wolfe, in their individual capacities, violated 42 U.S.C. §1983 by depriving Plaintiff of the following clearly-established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the United States Constitution:

a. The right to be free from unreasonable searches and seizures as secured by the Fourth and Fourteenth Amendments;
b. The right to be free from excessive and unreasonable force in the course of search or seizure as secured by the Fourth and Fourteenth Amendments;
c. The right to be free of unlawful, reckless, deliberately indifferent, and conscience shocking deadly and/or excessive force as secured by the Fourteenth Amendment; and
d. In such other particulars as may be learned through discovery.

126. Mr. Blakley had a right to be free from unreasonable searches and seizures under the Fourth Amendment.

127. Defendants Mabe, Smith, and Wolfe had no lawful authority to enter Mr. Blakley's home on March 4, 2021, and Mr. Blakley did not consent to their entry.

128. Defendants Mabe, Smith, and Wolfe violated Mr. Blakley's Fourth Amendment rights when they forced entry into his home without consent and without probable cause.

129. Mr. Blakley had a right to be free from excessive force under the Fourth Amendment, which requires that any force used against a person at liberty be objectively reasonable under the totality of the circumstances.

130. Mr. Blakley did not pose any threat to the safety of the officers, himself, or anyone else; he did not actively resist; he did not commit any crime; and he did not attempt to flee or escape.

131. Defendants Mabe, Smith, and Wolfe's use of excessive force was objectively unreasonable, unnecessary, gratuitous, and punitive.

132. As a direct result of Defendants' violations of Mr. Blakley's Fourth Amendment rights, Mr. Blakley experienced severe physical injury, conscious pain and suffering, and emotional and psychological distress.

133. As a direct and proximate result of the conduct of Defendants Mabe, Smith and Wolfe in their individual capacities, Plaintiff is informed and believes he is entitled to actual, consequential, and punitive damages and penalties allowable under 42 U.S.C. §1983 and reasonable costs and attorney fees pursuant to 42 U.S.C. §1988.

134. Defendants Mabe, Smith, and Wolfe's law enforcement wrongful act caused Mr. Blakley damages in an amount totaling two million dollars.

**42 U.S.C. § 1983 – Supervisory Liability**

**(Defendant Dalton)**

135. The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

136. At all times relevant to the Complaint, Defendant Dalton acted under color or pretense of North Carolina law, customs, practice, usage, or policy as the supervisor of Defendants Mabe, Smith, and Wolfe on behalf of SCSO and Sheriff Lemons, pursuant to the customs, practices, policies, and/or procedures of SCSO.

137. Defendant Dalton was well aware of Mr. Blakley's constitutional rights as a citizen and resident of Stokes County, North Carolina, including his right to be free from violations of his liberty interests and his right to be free from unlawful searches and seizures and excessive uses of force.

138. Defendant Dalton possessed actual and/or constructive knowledge that Defendants Mabe, Smith, and Wolfe were the subjects of prior use of force/excessive force complaints and posed a harm to citizens, a risk that was heightened to an unacceptable level when the Defendants worked together because, in the words of Defendant Dalton, they feed off each other.

139. Upon information and belief, Defendant Dalton, as the supervisor for Defendants Mabe, Smith, and Wolfe, possessed the power and ability to train and/or supervise these Defendants and to prevent these Defendants from working together and consciously and intentionally failed to act or intervene to prevent them from working together on March 4, 2021. Defendant Dalton was deliberately

indifferent to his responsibility to train and supervise these Defendants and therefore authorized and permitted these Defendants' actions.

140. Defendant Dalton received the verbal complaint of Mr. Blakley regarding the unlawful entry and unlawful use of force by Defendants Mabe, Smith, and Wolfe and "saw the video" of their conduct. Defendant Dalton failed to open any investigation, document the complaint, or take any corrective action against these Defendants.

141. Upon information and belief, Defendant Dalton lied to Mr. Blakley when he indicated that he "saw the video" of his arrest and assault or, in the alternative, lost or destroyed the video(s). By his action, Defendant Dalton ratified the behavior of Defendants Mabe, Smith, and Wolfe.

142. As a direct and proximate result of the conduct and failures of Defendant Dalton, he violated Mr. Blakley's constitutional rights, causing severe physical injury, conscious pain and suffering, and lasting emotional and psychological trauma.

143. As a direct and proximate result of the conduct and failures of Defendant Dalton in his individual capacity, Plaintiff is informed and believes he is entitled to actual, consequential, and punitive damages and penalties allowable under 42 U.S.C. §1983 and reasonable costs and attorney fees pursuant to 42 U.S.C. §1988.

144. Defendant Dalton's law enforcement wrongful act caused Mr. Blakley damages in an amount totaling three hundred thousand ($300,000.00).

**42 U.S.C. § 1983 – FOURTH AMENDMENT**

**(Defendant Sheriff Lemons)**

145. The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

146. Defendants Mabe, Smith, and Wolfe violated Plaintiff's constitutional rights while they were acting on behalf of SCSO and Sheriff Lemons, pursuant to the customs, practices, policies, and/or procedures of SCSO.

147. Defendant Lemons implemented, maintained, and enforced the customs, practices, policies, or procedures that directed, encouraged, or permitted Defendants Mabe, Smith, and Wolfe to conduct unlawful searches and use excessive force against individuals. Defendant Lemons has a duty to ensure that the deputies working for SCSO are qualified, credentialed, and trained.

148. SCSO does not provide deputies with training on execution of warrants, use of force, written policies on use of force, or guidance on what degree of force should be used in different situations.

149. Defendant Lemons failed to train deputies on proper procedures for lawful searches/obtaining consent to enter private property, and proper use of force. Defendant Lemons further failed to supervise and/or failed to discipline deputies whose previous unlawful searches/entry onto private property and uses of excessive force implied tacit authorization for such behaviors and created a widespread custom and practice of unlawful entry onto property and use of excessive force within the SCSO.

150. Defendant Sheriff Lemons knew that his customs, practices, policies, or procedures created an environment of the pervasive practice of unlawful searches/entry onto property and use of excessive force the existed within SCSO.

151. As a result of the customs, practices, policies, or procedures that directed, encouraged, or permitted the unlawful search/entry onto private property and use of excessive force, Defendants Mabe, Smith, and Wolfe did violate Mr. Blakley's constitutional rights, causing severe physical injury, conscious pain and suffering, and lasting emotional and psychological trauma.

152. As a direct and proximate result of the conduct of Defendant Lemons in his official capacity as Sheriff of Stokes County, Plaintiff is informed and believes he is entitled to actual, consequential, and punitive damages and penalties allowable under 42 U.S.C. §1983 and reasonable costs and attorney fees pursuant to 42 U.S.C. §1988.

**FAILURE TO INTERVENE**
**(Defendant Wolfe)**

153. The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

154. Defendants Mabe and Smith, violated Plaintiff's constitutional rights in the presence of Defendant Wolfe.

155. Defendant Wolfe, as a law enforcement officer with the Stokes County Sheriff's Office, possessed the power to intervene and stop the unlawful and brutal actions of Defendants Mabe and Smith.

156. Defendant Wolfe chose not to take any action to intervene, to stop Defendants Mabe and Smith or to protect Mr. Blakley.

157. As a direct and proximate result of Defendant Wolfe's actions and/or failures to act, Defendant Wolfe violated Mr. Blakley's constitutional rights, resulting in severe physical injury, conscious pain and suffering, and lasting emotional and psychological trauma.

158. As a direct and proximate result of the conduct and failures of Defendant Wolfe in his individual capacity, Plaintiff is informed and believes he is entitled to actual, consequential, and punitive damages and penalties allowable under 42 U.S.C. §1983 and reasonable costs and attorney fees pursuant to 42 U.S.C. §1988.

159. Defendant Lemons' Public Official wrongful act caused Mr. Blakley damages totaling the total claim limit under the NCACC/LPP Public Official Liability Coverage.

**Assault and Battery**

160. The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein

161. Defendant Mabe, Smith and Wolfe, in their individual and official capacities as deputies for Stokes County Sheriff's Office, unjustifiably used potentially deadly force against Plaintiff, which was objectively excessive and unreasonable under the circumstances.

162. Defendants' intentional acts as described more fully hereinabove, put Plaintiff in actual, subjective apprehension of imminent harmful or offensive contact.

163. Plaintiff's apprehension was objectively reasonable under the circumstances in that a person of ordinary care and prudence under the same or similar circumstances would have believed that harmful, or offensive contact was about to occur.

164. Defendants' intentional acts of force constituted a harmful or offensive contact with Plaintiffs.

165. Defendants' actions proximately caused the harmful or offensive contact with Plaintiffs.

166. Plaintiff did not consent to the contact with, from, or by any Defendant.

167. Defendants Mabe, Smith, Wolfe, and/or Defendant Lemons as Sheriff of Stokes County are jointly and severally liable for the malicious assault and battery of Plaintiff for damages in excess of $25,000.00, the exact amount later to be determined at trial.

168. As a direct and proximate result of the conduct of these Defendants, Plaintiff suffered severe physical injury, conscious pain and suffering, and lasting emotional and psychological trauma and is informed and believes he is entitled to actual, consequential, and punitive damages and penalties allowable under North Carolina law.

**Gross Negligence**

169. The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

170. Defendants Mabe, Smith, Wolfe, and Dalton, acting under color or pretense of North Carolina law, customs, practices, usage, or policy at all times mentioned herein, and in their capacity as officers, agents, and employees of Defendant Lemons as Sheriff of Stokes County, have a duty to act with due care.

171. Defendant Sheriff of Stokes County, by and through its agents, servants, and employees, were grossly negligent and/or reckless in the following particulars:

a. In failing to protect Mr. Blakley from harm at the hands of its deputies;
b. In failing to properly train or supervise its personnel, agents, officers, and/or employees;
c. In failing to draft and/or enforce proper policies and procedures with regard to hiring, evaluating, and supervising its employees;
d. In failing to investigate reports of excessive force by its employees;
e. In failing to discipline or take any corrective action, up to and including terminating, its employees for using excessive force;
f. In the loss or destruction of records of complaints against employees; and
g. In other particulars as the evidence may show.

172. As a direct and proximate result of the grossly negligent, reckless, intentional and willful conduct of Defendants Mabe, Smith, and Wolfe as well as their conscious disregard of the health and safety of Plaintiff, and other members of the

law abiding public as alleged herein, Plaintiff severe physical injury, conscious pain and suffering, and lasting emotional and psychological trauma.

173. Plaintiff is informed and believes he is entitled to recover actual, consequential, punitive, and exemplary damages under both federal and state law to punish Defendants for their illegal, egregiously wrongful, reckless, willful, and/or wanton misconduct and to determine such conduct by others.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

174. The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

175. Defendants Mabe, Smith, Wolfe, and Dalton, at all times relevant to this Complaint were acting under color or pretense of North Carolina law, customs, practices, usage, or policy at all times mentioned herein, and in their capacity as officers, agents, and employees of Defendant Lemons as Sheriff of Stokes County.

176. Defendants engaged in extreme and outrageous conduct with the intent to cause emotional distress by way of the following:

a. Entering Mr. Blakley's home without lawful authority and without consent;

b. Attempting to execute an arrest warrant at an address not listed on the warrant;

c. Identifying the subject of an arrest warrant based only on the name and without regard to age, address, or physical description;

d. Forcibly entering Mr. Blakley's home;

e. Violently throwing an elderly man to the floor when he posed no threat to officer safety;
f. Savagely beating Mr. Blakley by kicking and punching him in the shins, back, buttocks, hips, abdomen, ribs, and forehead;
g. Assaulting Mr. Blakley after he was thrown to the floor and placed in handcuffs;
h. Ignoring citizen complaints of excessive force by officers;
i. Failing to supervise or provide any disciplinary or corrective actions against officers known to use excessive force;
j. Lying to citizens to discourage the filing of citizen complaints against officers;
k. Destroying video evidence of encounters with officers;
l. Failing to utilize body worn cameras during attempted execution of warrants or entry onto private property; and
m. In other particulars as the evidence may show.

177. As a direct and proximate result of this extreme and outrageous conduct, Plaintiff suffered severe physical injury, conscious pain and suffering, and lasting emotional and psychological trauma.

178. Plaintiff is informed and believes he is entitled to recover actual, consequential, punitive, and exemplary damages in an amount to be determined at trial.

**Suit of Sheriff's Bonds – N.C. Gen. Stat. § 162-8 & 58-76-5**

179. The preceding and foregoing paragraphs are incorporated by reference as if fully set forth herein.

180. Upon information and belief, Sheriff Lemon held a surety bond in March 2021 with Western Surety Company.

181. In all the actions and conduct set forth herein in all causes of action, the individually named Defendants Mabe, Smith, Wolfe, and Dalton were acting within the scope and course of their authority as Deputy Sheriffs and under the color of their office as Deputy Sheriffs and employees of the Stokes County Sheriff's Office.

182. The actions of these Defendants constitute neglect and malfeasance in their employment and were taken under the auspices of the offices of the Sheriff of Stokes County, North Carolina.

183. As a direct and proximate result of the neglect and malfeasance of these Defendants, Plaintiff suffered severe physical injury, conscious pain and suffering, and lasting emotional and psychological trauma.

184. Defendant Western Surety Company is liable to Plaintiff for his injuries caused by the deputies of the Stokes County Sheriff's Office as those individuals were acting under the non-delegable authority of the Sheriff at all times.

185. Plaintiff is entitled to recover the full amount of the Sheriff's bonds as to the claims against each Defendant according to the provisions of N.C. Gen. Stat. § 58-76-5.

186. Plaintiff is entitled to recover on the bond all damages caused by the neglect and malfeasance of Defendant Lemon and his agents, as allowed by N.C.G.S. § 28A-28-2(b).

187. Plaintiff may sue repeatedly on the bond until judgment is paid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that after due proceedings, there be judgment rendered herein in Plaintiff's favor and against all Defendants, individually and jointly, as follows:

a. Compensatory and punitive damages as prayed for herein;
b. Reasonable attorney's fees, as provided in 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 29 U.S.C. § 794(b) and all costs of these proceedings and legal interest;
c. For interest on each judgment for Plaintiff;
d. Punitive damages pursuant to 42 U.S.C. § 1983 and any other applicable statute;
e. For punitive damages under state law for any actions deemed to have been committed with malice;
f. All other relief as appears just and proper to this Honorable Court.

s/ Micheal L. Littlejohn Jr.
Micheal L. Littlejohn Jr.
N.C. Bar No. 49353
Littlejohn Law PLLC
PO Box 16661

Charlotte, NC 28297
Telephone: (704) 322-4581
Fax: (704) 625-9396
Email: mll@littlejohn-law.com
Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**1:2024-cv-00183**

LARRY GRAY BLAKLEY SR.,

*Plaintiff*,

v.

SERGEANT JOSH MABE, in his individual and official capacity as Deputy for Stokes County Sheriff; SHERIFF JOEY LEMONS, in his official capacity as Sheriff of Stokes County, North Carolina; DEPUTY CODY SMITH, in his individual and official capacity as Deputy for Stokes County Sheriff; DEPUTY MONTY G. WOLFE, in his individual and official capacity as Deputy for Stokes County Sheriff; CAPTAIN TERRY DALTON in his individual and official capacity as a Captain for Stokes County Sheriff; and WESTERN SURETY COMPANY,

*Defendants*.
____________________________________/

**DECLARATION OF PLAINTIFF LARRY BLAKLEY IN SUPPORT OF COMPLAINT**

## DECLARATION OF LARRY G. BLAKLEY SR.

Pursuant to 28 U.S.C. § 1746, I, Larry G. Blakley, hereby declares as follows:

1. I am over the age of 18, of sound mind, and otherwise competent to make this declaration. The written testimony below is based on my personal knowledge, observations, and experiences.

2. I am fully competent to make this declaration and I have personal knowledge of the facts stated in this declaration.

3. This declaration is submitted in support of the instant Complaint.

4. I am currently 78 years old and live with my daughter, Shannon Goins, in Stokes County, North Carolina. I am submitting this Declaration in support of my complaint against the Stokes County Sheriff, Joey Lemons, Captain Dalton, Deputy Mabe, Deputy Smith, Deputy Monty Wolfe, and Western Surety Company.

5. On March 4, 2021, I was living alone at 107 Carson Circle Road in Stokes County, North Carolina. It was dark, around 8:30 PM, when I heard loud knocking on my door. I was not expecting anyone. I heard someone yelling law enforcement and I made my way to the door. I was 75 years old at the time and don't move quickly.

6. I opened the door and saw at least three deputies. At least one of them asked if they could come inside, and I said no.

7. Someone said they were there for a warrant on Larry Blakley. My son is named Larry Blakley, Jr., and I told them they had the wrong person. I voluntarily showed them my identification and told them that my son did not live with me.

8. The officers pushed their way into my house, grabbed me, and threw me onto the floor. These officers, who I believe to be Deputies Mabe, Smith, and Wolfe of the Stokes County Sheriff's Office, punched and kicked me while I was on the ground. I remember kicks to my legs, belly, sides, back, and butt. Someone stomped on my hand and kicked me in the forehead.

9. After I was thrown on the ground, but before the beating stopped, one of the deputies put me in handcuffs. The kicking kept going even after they had the handcuffs on me.

10. The Defendant deputies went on to search my home without my permission.

11. I was in a lot of pain after being thrown to the ground and beaten, but none of the officers offered any medical treatment or to take me to the hospital. They took me to the jail instead.

12. One of the deputies put me in the patrol car with my hands still in handcuffs, but he did not put a seatbelt on me. I was falling over in the backseat as he drove because I could

not brace myself. I was in a lot of pain before, and this made it worse. I believe the officer that was driving did this on purpose to cause more pain, injury, and humiliation.

13. As one deputy was walking me into the jail, he threatened to "flatten my ass" and hurt me again. I tied to comply with every request he made after that and to give him no reason for another attack.

14. I was in a lot of pain but did not complain about it because I wanted this whole thing to be over. Eventually, that same deputy took me home.

15. One I was finally back home and there were no more deputies around, I called my daughter, Shannon Goins, to tell her what happened. I told her how much pain I was in and that I was having trouble breathing. She called for an ambulance.

16. EMS picked me up and home and took me to the emergency room. I felt horrible. They gave me IV medicine but that pain was still severe. I had a lot of tests done at the hospital and it showed a broken rib and two broken vertebrae. The bruising was starting to show and it was massive.

17. The next morning, I was back home and my daughter Shannon and granddaughter Amanda Blakley were there. I told them both what happened and Amanda took pictures of my bruises with her phone.

18. I was listening as Amanda called Cpt. Terry Dalton of the Stokes County Sheriff's Office and demand to file a complaint against the deputies. Dalton was stand-offish and said he had "already seen the videos" and there was no need to file a complaint. Amanda insisted so the three of us went to the Sheriff's office in Danbury.

19. Once we got to Cpt. Dalton's office, Amanda showed him the photos of my bruising. Cpt. Dalton's demeanor changed after he saw them. He said that the office had received complaints about these officers, Mabe, Smith, and Wolfe, before and that they feed off each other. Amanda and I were able to tell Cpt. Dalton our complaints, but he did not have us give a statement or give us any forms. Cpt. Dalton did not give us a file number or follow-up with us after this one conversation.

20. The bruising and swelling after this attack on March 4, 2021 took a long time to heal. I have been in constant pain since the, but it is better now than right after the attack. I have trouble moving that I did not have before the incident. I move very slowly and can be unsteady. Now I have constant back pain, trouble walking and with balance, trouble breathing. I have been hospitalized several times since this accident.

21. I don't live on my own anymore and now stay with my daughter, Shannon.

22. My son, Larry Blakley Jr., shares my name, but I am 22 years older than he is. We also do not look alike. Larry Blakley, Jr. has a had a few run-ins with the Sheriff's office in the past and I believe that the deputies who were at my house knew what Larry Blakley, Jr. looked like. We have vastly different appearances. If they had looked at the arrest warrant to see who it was actually for, they would not have come to my house. My address was not even on the warrant.

23. As of March 4, 2021, I had not had any contact with Larry Blakley, Jr. since October 2020. He did not stay with me and did not visit. There was no reason to believe that he would have been at my house on March 4, 2021.

24. These officers brutally attacked and permanently injured me on March 4, 2021. I did not do anything to deserve this.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on Mar 4, 2024

Larry G Blakley Sr (Mar 4, 2024 16:50 EST)

Larry G. Blakley Sr.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**1:2024-cv-00183**

LARRY GRAY BLAKLEY SR.,

*Plaintiff*,

v.

SERGEANT JOSH MABE, in his individual and official capacity as Deputy for Stokes County Sheriff; SHERIFF JOEY LEMONS, in his official capacity as Sheriff of Stokes County, North Carolina; DEPUTY CODY SMITH, in his individual and official capacity as Deputy for Stokes County Sheriff; DEPUTY MONTY G. WOLFE, in his individual and official capacity as Deputy for Stokes County Sheriff; CAPTAIN TERRY DALTON in his individual and official capacity as a Captain for Stokes County Sheriff; and WESTERN SURETY COMPANY,

*Defendants*.
___________________________________/

**AFFIDAVIT OF SHANNON GOINS IN SUPPORT OF COMPLAINT**

**AFFIDAVIT OF SHANNON GOINS**

I, Shannon Goins, upon being duly sworn and under penalty of perjury, make the following statement of my own free will and accord:

1. To my knowledge, all of the facts stated in this affidavit are true and correct.

2. I am over the age of 18, of sound mind, and otherwise competent to make this Affidavit. The written testimony below is based on my personal knowledge, observations, and experiences.

3. I am the daughter of Larry Blakley, Sr. On March 4, 2021, I learned that my father had been attacked by Stokes County Sheriff's Deputies earlier that evening.

4. On March 4, 2021, my father called me and told me he had been arrested and beaten by Sheriff's office. I could hear from his voice that he was in a lot of pain. He told me where he was hurting and that he was having trouble breathing. I was very concerned and called for an ambulance to check on him.

5. EMS picked up my father from his home and took him to the emergency room. I met him there.

6. My father was in severe pain at the hospital despite being on IV medications. I could see bruising forming on his legs, arms, and midsection where I could see it. It was clear that the bruising would be widespread but I was not prepared for how bad it was the next day.

7. The morning of March 5, I was at my father's home with my niece, Amanda Blakley. When my father showed us the bruising, I was shocked. He had huge, deep purple bruising along the right side of his body, extending around his abdomen and his buttocks. There was a white strip of no bruises where his body bent as he tried to protect himself. The bruising pattern showed that something struck him hard. My grandfather told us that these areas are where the deputies kicked and punched him the night before after they threw him on the ground. Amanda took pictures of the injuries with her phone.

8. Again, I was shocked. I joined Amanda as she called Captain Dalton of the Stokes County Sheriff's Office. He told us on the phone that he had already seen the tapes and there was no need to file a complaint. I, along with Amanda, was not going to let this go, so we went with my father to the Sheriff's office.

9. Once we arrived at the Sheriff's office, Captain Dalton was stand-offish and asked why we wanted to file a complaint. Amanda showed Captain Dalton the photographs of my father's injuries on my phone, and his tone changed.

10. Captain Dalton seemed to know which officers were involved and told us that the office had received complaints about "these deputies" before. He made a comment that these deputies feed off each other. I understood him to mean that

when these particular deputies work together, situations tend to escalate and that there had been previous complaints of excessive force against all of them. They never should have been working together at my father's house.

11. It was our intent to file a complaint against each of the officer's who interacted with Larry Blakley, Sr. on March 4, 2021. I believe Captain Dalton understood that intent. However, Captain Dalton never had any of use write or sign any statement or other paperwork. He did not provide us with any sort of file or case number. To my knowledge, Captain Dalton did not take any action in response to our conversations.

12. I now believe that Captain Dalton did not document this as a formal complaint against anyone. We gave him information and photos a of the injuries to my grandfather, but it is my understanding that there was no investigation and no action was taken against any of the deputies involved.

13. After this incident, my father's general health deteriorated Even after the bruises finally healed, he was not able to move as well as he used to. He has bad back pain, trouble getting out of bed or a chair, and difficulty walking. He is not able to take care of himself and has moved in with me. My father cannot take care of himself and requires help with most every activity, even basics like getting dressed and preparing food.

14. My father has also become fearful since this incident. He believes that the Sheriff's Department will retaliate against him for complaining after it happened and even moreso for filing a lawsuit. He talks about the attack frequently and it affects him physically. He gets nervous, agitated, and jumpy. I believe he would benefit greatly from counseling.

Further affiant sayeth not.

**[SIGNATURE ON NEXT PAGE]**

I signed this affidavit on 03/04/2024 at Rural Hall ,North Carolina.

Shannon Lea Goins

Shannon Goins

State of Florida

County of Broward

Subscribed and Sworn to Before Me

This 4th day of March, 2024.

Peta-Gaye Anderson

Notary Republic

My Commission Expires: 03/09/2025

Peta-Gaye Anderson

by Shannon Lea Goins

Type of ID produced: NC DRIVER LICENSE/KBA

___ Personally Known OR ✓ Produced Identification

Notarized remotely online using communication technology via Proof.

NOTARY PUBLIC • STATE OF FLORIDA

PETA-GAYE ANDERSON

Notary Public - State of Florida

Commission # HH 102153

Expires on March 9, 2025

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**1:2024-cv-00183**

LARRY GRAY BLAKLEY SR.,

*Plaintiff*,

v.

SERGEANT JOSH MABE, in his individual and official capacity as Deputy for Stokes County Sheriff; SHERIFF JOEY LEMONS, in his official capacity as Sheriff of Stokes County, North Carolina; DEPUTY CODY SMITH, in his individual and official capacity as Deputy for Stokes County Sheriff; DEPUTY MONTY G. WOLFE, in his individual and official capacity as Deputy for Stokes County Sheriff; CAPTAIN TERRY DALTON in his individual and official capacity as a Captain for Stokes County Sheriff; and WESTERN SURETY COMPANY,

*Defendants*.
_____________________________________/

**DECLARATION OF AMANDA BLAKLEY IN SUPPORT OF COMPLAINT**

**<u>DECLARATION OF AMANDA BLAKLEY</u>**

Pursuant to 28 U.S.C. § 1746, I, Amanda Blakley, hereby declares as follows:

1. I am I am the granddaughter of Larry Blakley, Sr. On March 5, 2021, I learned that my grandfather had been attacked by Stokes County Sheriff's Deputies the night before.

2. I am fully competent to make this declaration and I have personal knowledge of the facts stated in this declaration.

3. This declaration is submitted in support of the instant Verified Complaint filed by Plaintiff, Larry Gray Blakley Sr. on March 4, 2024 in the United States District Courts Middle District of North Carolina.

4. To my knowledge, all of the facts stated in this declaration are true and correct.

5. I am over 18 years of age. I reside in Stokes County, North Carolina. I am fully competent to make this affidavit and I have personal knowledge of the facts stated in this affidavit.

6. I am the granddaughter of Larry Blakley, Sr. On March 5, 2021, I learned that my grandfather had been attacked by Stokes County Sheriff's Deputies the night before.

7. This Affidavit is submitted in support of the Complaint filed by Plaintiff, Larry Gray Blakley Sr. on March 4, 2024 in the United States District Courts Middle District of North Carolina.

8. On March 5, 2021, I went to my grandfather, Larry Blakley, Sr.'s home to see him for myself. He was in a lot of pain and not moving well. I could see some deep bruising showing and asked him to show me all of it.

9. I took photos of the injuries that I could see using my phone. The images here are the photographs I took and fairly and accurately depict the injuries to Larry Blakley, Jr. as they appeared on March 5, 2021.

10. The two images below reflect my grandfather's injuries on May 5, 2021.




11. After taking the pictures, I called Captain Terry Dalton of the Stokes County Sheriff's Department to file a complaint about the officers. I told Captain Dalton why I was calling, and he told me that he had "**already seen the tapes**" and there was no need to file a Complaint. Captain Dalton sounded annoyed that I was bothering him. I insisted that I wanted to file a complaint on the officers involved, and Captain Dalton told me I could come to the office to do so.

12. I drove to the Sheriff's office in Danbury, NC with my grandfather, Larry Blakley Sr. and my aunt, Shannon Goins. We went into the office and spoke to Captain Dalton directly.

13. Captain Dalton was not welcoming and did not offer us any forms to file a complaint. Instead, he was standoffish and asked why we wanted to file a complaint. I showed Captain Dalton the photographs of my grandfather's injuries on my phone.

14. Captain Dalton's tone changed immediately after showing him the photos. He asked me to email them to him, and I did.

15. Captain Dalton told us that the office had received complaints about "**these deputies**" before and that they feed off each other. I do not remember if he specifically named

each officer, but I understood him to mean that when these officers work together, situations tend to escalate and that there had been previous complaints of excessive force against all of them.

16. It was my intent to file a Complaint against each of the officers who interacted with Larry Blakley, Sr. on March 4, 2021. I believe Captain Dalton understood my intent.

17. Captain Dalton never had me, my aunt Shannon Goins, or my grandfather Larry Blakley write or sign any statement or other paperwork. He did not provide us with any sort of file or case number. To my knowledge, Captain Dalton did not take any action in response to our conversations.

18. I now believe that Captain Dalton did accept the information from me as a "complaint" and ignored them.

19. After this incident, I saw my grandfather's general health deteriorate. Even after the bruises finally healed, he was not able to move as well as he used to. He has bad back pain, trouble getting out of bed or a chair, and difficulty walking. He is not able to take care of himself and has moved in with my aunt, Shannon Goins. Now, he hardly leaves the house.

20. My grandfather has also become fearful since this incident. He believes that the Sheriff's Department will retaliate against him for complaining after it happened and even moreso for filing a lawsuit. He talks about the attack frequently and it affects him physically. He gets nervous, agitated, and jumpy. I believe he would benefit greatly from counseling.

21. I have learned that one of the deputies involved is former Stokes County Sheriff Deputy Josh Mabe. I grew up with his younger brother. Additionally, my younger brother has had interactions with law enforcement, specifically Deputy Mabe. My brother complained about Mabe using excessive force well before this incident with my grandfather. I do not believe the Stokes County Sheriff's Office handles complaints appropriately and lets officers use excessive force unchecked.

22. On March 4, 2021, Larry Blakley, Jr. did not live with my grandfather and to my knowledge was not even communicating with him at that time. Neither Josh Mabe, Cody Smith, nor Monty Wolfe tried to correctly identify the Blakley whom the warrant was for.

23. My grandfather is not a dangerous or threatening man. He did not deserve to be beaten by anyone, much less officers who should be protecting people and not attacking them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on Mar 4, 2024

Amanda n blakley (Mar 4, 2024 13:20 EST)

Amanda Blakley